Case No. 18-30954 Now we get to the last case of the morning which is Caliste v. Cantrell and that's case No. 18-30954. We'll hear from Ms. DeFork. Good morning, Your Honors. May it please the Court, my name is Mindy Nunes-Dufour and I represent the appellant, Judge Cantrell. Judges hold a special position in society by virtue of their sworn oaths to administer impartial justice. Today this Court considers whether Judge Cantrell is willing to abandon his oath in bail hearings in order to collect a 1.8% bond fee from commercial sureties. There are situations so extreme in which even judges cannot be expected to maintain their impartiality, but this is not one of them. We've reached this conclusion today by first applying the average judge standard to assess whether there's an impermissible risk of actual bias. Second, by evaluating the alleged conflict of interest here within the framework developed by the Supreme Court in cases involving extreme allegations of unconstitutional bias against judges. And finally, considering the policy implications of increasing the ease with which judges will be forced from the bench in response to due process challenges to their impartiality. Turning first to the applicable standard. Contemporary Supreme Court cases, namely Aetna, Caperton, and Williams, resolve any question about whether the average judge standard is applicable in cases involving judges. It is true that Toomey first articulated the average man as a judge standard to find a conflict of interest for a mayor judge, and that standard has been cited numerous times. But it has also evolved in the face of new due process claims against judges for unconstitutional bias. Toomey itself talks about how it's invalidating a system in which, in quotations, an inferior judge is paid by convictions that violate due process. Toomey recognizes that it's not dealing with a member of the judiciary branch, but rather a member of the executive branch who is taking on some judiciary duties. Toomey also tells us, at 523, that we should consider common law principles when determining what due process is and what due process requires. And one of these principles, the most relevant here, is Blackstone's commentary, which states that the law will not presume a bias by a judge sworn to administer impartial justice. Judges' ability to maintain their independence is superior to that of an average man. Their professions and... I don't have too much credit, but, I mean, you say it's an extreme situation when a judge's impartiality might be questioned. I mean, I have to recuse in any case in which I own stock, and believe me, I don't own many shares of anything, but it is such a remote possibility that one case is going to affect the stock price, it's going to make any appreciable difference in the number of shares I own, yet it's standard you have to recuse in that situation. Here, you have this money, it's going to help pay staff, help pay CLE. I mean, that's a much bigger impact on that judge than this remote possibility that a few cents might change in the stock price of something I own. Judge, but the standard that you're referring to is an ethical standard that's been adopted by statute, and the court in Edna specifically, not in Edna, in Caperton, specifically talks about the difference between that standard, which is more stringent, than the due process standard, which they describe as the constitutional floor, the boundaries of due process. But the question here isn't whether judge can't – is Judge Cantrell the only one who does bail hearings? He is not. Along with commissioners, he – There are a bunch of judicial officers who conduct bail hearings, right? Correct. And he sits en banc with his fellow judges to disperse the money from the fund, right? Correct. So the only question here, it seems to me, is whether he continues to do bail hearings while he also sits on that committee, which is not a formal judicial committee, right? Your Honor, in one of the mayor cases, actually, Dugan, the mayor judge, who is not a judge, and who did not have these professional qualifications that the judges have, actually sat on the city commission that appropriated funds to the court and set his salary. And the fees and fines that he collected went into the city general fund, and he had a voice in how those funds were appropriated. And the court found that that interest was not enough to violate due process. And, again, that was in a case involving an executive acting as a judge. And I submit that the judges are held to an average judge standard, not an average man standard as we see the district court apply in this case. And, of course, the ABA standard, and many statutes adopt this standard, is a more stringent standard, and that is the standard of an average reasonable person. That is the average man standard. And the Caperton court specifically says that's not the standard applicable here. That standard is more stringent. So when a state or the federal government adopts a judicial disqualification test that is more stringent than due process, they're certainly willing to do so. But here we're dealing with a due process standard. Where did the Supreme Court ever expressly say it was changing the Toomey standard? I mean, to me it's just a situation where, you know, if I'm citing a case where the defendant's name is X and I'm quoting it, I'm going to take out that X and put in, you know, an ellipse. I mean, that just seems what's going on here. You're reading a lot into just a very basic sort of grammatical change that was made. Well, I respectfully disagree, Judge, because in Aetna the court says twice. It quotes Toomey, but it specifically omits man as a to say average judge. That's a difference between the two. So it's fitting it to that case. I mean, well, let me ask it another way. What is the difference between the average man and the average judge in terms of this issue? If I could just very briefly also say that in Caperton and in Williams in 2016, the judge quotes the average judge — I mean, the court quotes the average judge standard with no ellipses. They say this is the standard. To determine the probability of average — of actual bias, you determine whether an average judge would have an interest that violates due process. And to answer your question about the difference between the two standards, at least one legal scholar, former judge, and member of a State Judiciary Ethics Committee has said in direct — directly answered this question, that judges are personally and professionally aware of the meaning and application of the oath to remain neutral and partial, and the reasonable layperson is not. And to give a more practical example, he talks about judges having lunch, discussing lawyers who appear in their courtroom, how good they are, how bad they are. They're prepared. I really like this lawyer. And he says, how would an average man listening to that conversation feel about that lawyer's ability to decide a case? The average man would put himself in the shoes of the client who has the lawyer. Well, geez, I don't think the judge can be impartial in this case. I just heard him saying that my lawyer is a complete mess. But the average judge overhearing that conversation would not have any question about whether these judges would take the bench and uphold their oaths. I don't think the average man seeking bail down there would be concerned that the amount that's set here is going to be influenced by the necessity of keeping the office funds going. It seems to me that your average man thing may have cut against you. If there is a difference, I don't know that there is. I think an average man is always going to be able, without the experience, qualifications, and training of a judge, will always be more likely to see some chance for bias, particularly if they're a litigant. What do you do with this court's decision in Brown v. Vance? In Brown v. Vance, I would first like to point out that in footnote 2, we learned that the justices of the peace are lay people. So we're not dealing with judges as we are here with this set of qualifications and experience. And in footnote 8, the court sort of laments the continued practice of the justice of the peace systems by noting that the lack of professional qualifications makes this institution a mockery. So we actually aren't dealing with the kinds of judges that we have in this case who have the professional qualifications. You're using up all your time trying to persuade us about this. Why don't you move on to the other question here, which is that the fellow, presuming that he's subject to these other standards, he has assessed the fine, participated in assessing the bail, and then participates in a very important way in deciding how to spend the money, and it's on the judicial offices, furniture, travel, if I'm not mistaken, salaries of assistants. Those are all very significant aspects of the performance of the judge's office. Yes, Your Honor. I mean, there are certainly administrative tasks, and I think all judges to some extent have control over administrative tasks within their chambers. Actually, we don't, but on the federal court, at all. But go on. And I also would point out that the Judicial Expense Fund pays for things like coffee. For example, Judge Haynes the other day pointed out that her iPad helps her do her job better, but does that give her an interest, so much so in the case, that she would not be able to administer impartial justice. And she was looking for the line of where the constitutional line basically, so that there are – if you push the line of reasoning too far, you can always say something is personal, something will cause this judge to be biased. The question is, where is that line? And I think we've seen the Supreme Court articulate that line in three of the most recent cases where they consider judicial qualification challenges to judges, and they specifically say it requires extreme and extraordinary circumstances. I thought those cases were about the case, the parties. None of the recent cases are about this type of personal connection, right? Well, in Aetna, in Aetna, actually — But it was because that judge had himself had a lawsuit involving the same issue as the case. And it was, again, it was related to the issue in the case. It wasn't — anyway. Well, I guess it's the way you classify the interest. The judge in that case had a personal, pecuniary, direct, and substantial interest. And here the district court admits and we accept that this is not a personal interest. It's an institutional interest. And they cite Tawad to say that an institutional interest can be enough. I mean, other than maybe caring about myself getting paid, there's no one I care more about getting paid than my staff. And maybe some judges might be less selfish and care most about that. So I just think that's a — to me, that's a very strong incentive if your staff is potentially not going to get paid. I think it's fair to say that all judges care about their staffs. But the question is whether they care about them so much so that they're going to throw their judicial oaths out of the window. What if this — what if this fund paid the judge's salary? The fines do not pay the — if they paid the judge's salary, I think we would have a different question, Your Honor. But that is not the case here. So the distinction between the direct compensation for salary, but on the other hand, all the appointments of assistants and so forth, that it doesn't matter? Well, I think if it were paying the judge's salary, then that would be a direct personal interest, whereas here the interest is institutional. And I would actually like to point to your opinion in Chrysler Court, where you talk about how the indicators of bias in that case pointed in opposite directions. There, the Court was considering whether a commission could determine disputes of lemon laws, and the argument was that the dealers are going to be likely to find for the owners against the manufacturers because it resolves them of some liability in those disputes. You know, you've used very clever litigating tactics here because the other part of Judge Fallon's decision was to declare unconstitutional the lack of individualized consideration of each bond and the idea that every person had to have a commercial bond, which meant money was going to be kicked back into the fund. So if you had appealed that, then there would be absolutely no question at all about the appearance of impropriety of using these procedures, which maximized the money going into the fund and the institutional interests of the judges. Now, it's good that he stopped that, but going forward, how does Judge Cantrell interpret the declaration by the Court here? What does it mean institutionally? Sure. It's definitely not a litigation tactic. In fact, when the Court — when Judge Fallon issued that part of the declaratory judgment, Judge Cantrell had already begun to institute new bail procedures. He is willing and — Well, that's fine, but going — I mean, he's certainly not trying to — I'm sorry to cut you off, Judge. He is — he's trying to come into compliance as best as he can, but he really is backed into a corner here. But to answer her question, what is the effect of the declaratory judgment, that he can no longer sit on the en banc court divvying up the funds? I mean, what is the effect of this issue? The effect — What's going to change if you — if it's affirmed? Oh, if it's affirmed, I guess — I mean, that's something — Has anything changed already on this conflict issue? Not on this conflict issue, but Judge Cantrell's bail hearing procedures have substantially changed. And if — the media accuses him, if he sets a bail too high, that he's running a debtor's prison. If he sets a bail too low, he's not looking out for the safety of the community. Any time someone out on bail commits a crime — Forgetting about the media. I mean, it's — What's going to change on the conflict issue if this gets affirmed? What do you read the Court's order as requiring in terms of any change? Is it that he can't sit on the en banc court divvying up the funds, but he can still do bail? I don't quite understand what — we're all here to debate this. What is it — what does the declaratory judgment do? Well, I mean — It doesn't do anything. Why are we here? It's a good question, and I think it's a good question because — Ask the other side, too. I mean, it's a good question because if it means he can't sit en banc anymore, then we have a — then plaintiffs are saying, oh, well, he has pressure from his colleagues to still impose bail so high. I mean, it's a slippery slope. Let me ask you one. Let me interrupt you. On my time, just one quick question. What makes the — this system unconstitutional? I'm arguing, Your Honor, that this is — I know what you're arguing. You're arguing that it's ethical to do it, to engage in something that is otherwise a serious constitutional question itself of due process and settings of bail, et cetera. I don't see that you can — the underpinnings of the constitutional conclusions are the inherent difficulties of having judges set bails in which they are involved in the — for which they benefit, correct? And in a way, it's no — most courts in the country draw funding from a source that has a healthy fine and fee portion. There — I mean, it's — judges understand that their courts benefit from their fine and fee assessments. I don't think it's — I think that you're going down a slippery slope if you start to back off of the extreme and extraordinary situations that the court required in Caperton, Williams, and Aetna. Thank you. Okay. You have time for rebuttal. Thank you. Mr. Foley. Good morning. May it please the Court. Eric Foley for the plaintiff class. Also with me are Katie Schwarzman and Jim Craig representing the plaintiff class. How do you interpret the declaratory judgment? Your Honor, I think the declaratory judgment that Judge Fallon issued allows leeway for the judges, the city, the state, and other local actors to fashion their own solution here. I'll note that this is the only state in the country we're aware of that has a statute like this, that has a fee on commercial sureties that then goes to fund the courts in which the judges themselves control. So there are many jurisdictions that have found a way to fund the court constitutionally. Why didn't you challenge the state law and then you can't in a lawsuit against the judge? That's not a proper defendant. But why wouldn't you — because it does seem to me the structure is inherent in the statute Louisiana has. And so even just saying the judge couldn't sit on the en banc court, I mean, the concerns you have, I don't think it really would change much. So why not attack the statute itself that sets up this system? Well, Your Honor, this is the effect of multiple statutes. There's the fee on commercial sureties, then there's also a separate statute that establishes a pass-through fund, and then finally a statute that establishes a judicial expense fund.  So there's a lot of discretion involved here also on behalf of Judge Cantrell and his other judges. So this isn't just Orleans Parish. It's every parish in Louisiana, right? Well, Your Honor, I would say that the conflict here in Orleans Parish is particularly grave in that Orleans is the only parish that has a divided court system. So in every other parish, you have the civil and criminal courts unified, and the courts are able to benefit off of civil filing fees and all the other funding sources that the civil court has. That's not the case here in Orleans. Also, there's an extra percentage— I don't see why that makes a difference, but go on. Well, Your Honor, I would say that the difference in here is that the substantiality of the funding, as it were, would be affected where, in a unified system, the 3 percent bond fee is not going to be as substantial a part of the court's budget as it is— Could you spread the money more widely? I'm sorry, Your Honor. Could you spread the money more widely? Exactly, yes. And also, in Orleans, there's an extra percentage on this fee that comes to the judges. So, as to the slippery slope argument that Judge Cantrell is making— Let me just go back to the declaratory judgment and your answer on that. As I read it, it's basically we just hope they'll come up with a better system. I mean, no one has any concrete plans for how to get rid of this conflict of interest. Well, I think it can be read in conjunction with the— And you didn't ask for an injunction. We did not. I said it could be read in conjunction with the underlying opinion, and we're restricted from asking for an injunction by the amendment to 1983. And I think Congress's purpose in doing that was to allow judges and local courts the opportunity to correct these constitutional deficiencies that might be identified in the declaratory judgment. And I think the bench has already identified one way in which this could be remedied, which would be to take away either the executive control or to take away the money or to take away the adjudicatory function in one of those fashions. And there's a lot of different ways that could be done. One option might be in the pass-through fund that's controlled by four actors— the judges, the public defender, the district attorney, and the sheriff. They can apportion the fund among themselves by a vote of all the actors. So the judges could essentially give their share away to the other three actors in that fund that all benefit from this 3% fee. It seems like the defendant's in a bit of a difficult situation if this is affirmed. I mean, you bring this lawsuit. You win. And the defendant doesn't really know what needs to be done. It's a strict rule, but it has been in place for over a century and has antecedents even before that in the common law. I think we have to rely on the local government and the state to step up and contribute the funding. Well, let me ask you a question, though. I mean, this is a theoretical violation of due process once the city implements individualized setting of bail, right? Because if the judges set individualized bail, then that is based on various criteria, one of which is not legitimately— I mean, you can raise all your appearance issues if you want to, but if they're going by the book on individualized bail, then the money— yes, they get the money, but it's coming in a legitimate fashion. We would disagree, Your Honor, in that the standard of the possible temptation to an average man as a judge would still apply there even if count one, the assessment of bail, is complied with. There's still the temptation that's possible. And these line of cases, Toomey and Ward— But there you had the system that has now been disavowed here. No, if we look at Toomey and Ward where the city is benefiting off of the finer fee that's coming in off its adjudications, the concern there is with the system, not with the individual judge's subjective bias or interest in the system. The concern is that systematically this potential exists, and that would still be the case here if Judge Cantrell followed the declaratory judgment in count one to the T. There's unfortunately still the possible temptation that exists to maintain the revenue of the court at a higher degree, and that is a strong temptation. As Your Honor has noted, this fee goes to fund— But no individual defendant at that point would have— I mean, Toomey and Ward would have been cases where, you know, systemically they're jacking up the fines or whatever, right? Indeed. But again, if you have the individual bail bond procedures, the individual judge has to follow those, and a defendant can appeal the setting of bond. Can he not? The defendant can file a bond reduction motion that would then be heard weeks later, and later once the case is accepted— Yes, but there are a lot of lawyers out there like you who are interested in maintaining the integrity of these systems. True. But Toomey was what the judge was deciding, I think, prohibition-era misdemeanor cases. So there was still an appeal there. The judge was supposed to follow a due process trial. Yes, Toomey and Ward. But it was still that the incentive was there to find them guilty, get the fine, and enrich the coffers. Yes, Your Honor. Both Toomey and Ward were direct appeals from conviction and very similar issues of fees being used to enrich the coffers of the city, just as this fee is being used to fund the court's operations. Well, the judge is receiving the direct benefit from the monetary return from his decision. That's a difficulty. We order restitution in our system, sometimes it's directed to the judge can send the restitution back to victims. But we also—the government seizes drug deals and whatever, all kinds of property, substantial properties. But it goes into the general treasurer and whatever. It doesn't fund back. It's when you put the two together that you have the difficulty. When you index the return to the judge by the decision he makes, then you've got a difficulty, a very large one in my view. I agree, Your Honor. Here it's $250,000 per year is given to each chamber as out of this fund, and that's how they fund most of the personnel salaries for the court. The state is only paying the judge's salary and benefits, basically in a very small amount of salaries for the court reporter and transcriptionist, but there are amounts that were fixed in the 1960s and 70s, so it's a pittance at this point. The accountant for the court, when testifying to city council in 2013, made the statement that if we missed this 3% bond fee payout, just one of them, we can't make payroll. So this distribution from the sheriff of the bond fee is critical to the court's operation. Well, the problem—I mean I don't think the court should be in the business of stating advisory opinions and issuing judgments that are useless. And I don't—unless you can explain to me how a declaratory judgment against Judge Cantrell results in something effectual, I'm not sure how one can justify an advisory opinion. Well, Your Honor, it's the effect of this declaratory judgment. I think Judge Fallon was trying to leave as much— I don't want to know what he was motivated by. Tell me the answer. What is the concrete result of this declaratory judgment? The concrete result of the declaratory judgment is to remove the conflict in one of at least— No, you're saying no. It's to say, well, this is a conflict. It's a bad deal. Because I don't see—if Judge Cantrell himself becomes the only judge who oversees the bail bonds and leaves the administration to all the other CDC judges, then they're still all benefiting from the way the money comes in, right? The administration would have to be passed to an actor outside of the judge's control. I agree with that. Yeah, well, normally that requires a law, doesn't it? It could, but in this case, the statute that exists for the judicial—I'm sorry, the administration— You're saying the judges should give up the money voluntarily to the public defender and the prosecutor and so on. But you say that pays— Yeah, but then they'd have no staff. In the interim, they could go to the state and the city and request funding. But I'm saying all this is—this is think tank ideas. These are not—you know, if you have a declaratory judgment that the insurance policy covers such and such, then the insurer knows and the insured knows who's going to pay money to whom. A declaratory judgment is not just a statement of opinion. You can get coercive relief in conjunction with— Not under the PLRA. My question is what do you in this lawsuit seek, period? The plaintiffs seek an unbiased adjudication or an adjudication that's free of the potential of bias, and whether that's achieved through removing the influence of the fee or— What do you want this Court to do, just— I'll go back to—how does this translate to relief, effective relief? I mean, you could get a judicial declaration, but you have to— there ought to be more there in terms of practicality. Declaratory relief can be helpful, but we're just going to, of course, just say, well, that's an unconstitutional practice. Well, Your Honor, the point we're at here is that none of the actors are making any moves to change their practices while this declaratory judgment is on appeal, so no one has an incentive to actually— Well, they did change their practices about individualized bail. At least that's what we're told. We do not agree with that assessment at the moment, and it's actually— there's a preliminary injunction pending in the lower court, so that's still being litigated. So the incentive at this moment to make one of those possible changes to the direction of the funding or to the control of the judicial— I guess the declaratory judgment, I guess it does at least say the current arrangement is unlawful, but what happens if a year from now it's still going on? What would you do, I mean, with that judgment? Then we would have to seek injunctive relief in more specific terms to protect the plaintiff's rights in this case, and I think it could take multiple forms. Again, it would be best if the local actors were able to craft a solution that all those parties could live with and was the least impactful on the court and on the plaintiffs. But we're not there yet, and I think the fact that declaratory judgment, as you say, makes clear that the current practice is unconstitutional. It gives us an opportunity to reach this solution as— You know, there are probably a lot of things that are unconstitutional and also probably morally—ethically questionable going on throughout government everywhere every day, but that doesn't mean that we're allowed to step in and issue a judgment or a decree because we are not a council of revision. Your Honor, I think that's been the effect of the amendment to 1985, and I believe it's subsection 3, makes that almost a necessity in that we can't seek that specific injunctive relief until we have declaratory judgment. And the declaratory judgment is clear that the current practice is unconstitutional. You have to have standing still. I mean, there's other requirements that still exist for— Indeed, and the plaintiffs, the two representative plaintiffs, have standing at the time of filing, and there's still a continuing wave of people appearing before a judge in a trial where there are about 100 a week who are class members and have standing. I mean, this is real interesting in terms of what your attorney fee claim would be. Your Honor, I don't have an attorney claim fee in 1988 for this, given that we're serving a judge and it's for only equitable relief. We haven't sought any damages, so we have no fee claim here. I did want to comment briefly, if I may, on this distinction between institutional conflict and judicial disqualification in the Aetna and Caperton cases. I think it's important to remember that Aetna and Caperton's discussion of this heightened standard is relative to the classic conception of bias, meaning not a financial incentive. The court was very clear, both in Brown and Vance and in Toomey as well, that yes, when we're talking about a bias like a family relation or some kind of antipathy even that a judge might have, that is a much different standard than when finance is involved. And a financial incentive has always had a high and strict standard that the court would apply. Let me ask you a question about you bring this appeal. What specifically did you appeal from? I understand that, but what is the appeal from? I should reframe the question, yes? The appeal is from Judge Fowler's declaratory judgment. Yes, I know. What ruling? Is it a final judgment? What's the status of that case? There's a final judgment. The first claimant was not appealed, and so our position of final judgment on count one is in place. What is the appealable order from which this bill is brought? I believe the order by Judge Cantrell stating that the current practices— Keep your voice up a little bit. I'm sorry, that the order by Judge Fowler, the current practices of the court in setting bail and having this possible temptation under ward is a violation of the constitutional rights of the plaintiffs. Let me ask you a question. One follow-up question. Is that an interlocutory ruling? It's certified under 54B. Certified B is certification. A sinful would happen, right? No, I believe there was a certification under 54B. Well, they filed a notice of appeal, and they chose not to appeal the part that had to do with the individualized setting, right? Yes, Your Honor. So it was a final declaratory. Yes. What is the status of Canby City of New Orleans? Canby City of New Orleans was argued on Tuesday before Judge Haynes. Why didn't these get consolidated? I do not know, Your Honor. It seems rather inefficient. Okay. I believe I had said all I had to say on the distinction between judicial disqualification and institutional conflict. One other point I did want to make on a distinction that we dug in, when we talk about that case, it's true that the mayor was found not to be conflicted there, but it's important to note that the executive in that city was not the mayor, but actually a tripartite role of three officials, the city manager. He wasn't the one who gave out the money. And a legal counsel, yes. So in contrast to Ward and to me, where there is only a single executive who would have that responsibility for finance, and it's not – and also the – I thought in Dugan he was a city council member. It was a city manager who really exercised the authority, but there was a city council. He was one of five who did exercise some legislative authority, which one of five is more than we have here. What, it's one of 13 here or something? Well, it's one in 13 here, one in five in Dugan, but the mayor – Other actors. Yeah, and the mayor in Dugan had a legislative vote, but the mayor didn't have financial control, and the city manager actually didn't have financial control either because there was a separate executive that they appointed with financial control. How come this – is this argument being made in forfeiture cases against prosecuting authorities? I believe that Ward might have been cited in the Timber case that came down from the Supreme Court this year. Prosecutors don't have the same duties of impartiality that a judge does. No, they can just steal. They don't have the same – I mean, they have an agenda. That's their job is to have an agenda, unlike a judge. That's correct, Your Honor, and that's been recognized also in a case from the District of New Mexico, a Harjo, which I believe both sides cited as well, where the case considered this conflict of interest on behalf of prosecutors declined that argument but did find that the hearing officers who were involved in the forfeitures did have a conflict of interest under Ward and Toomey. And that, again, would be much different than the situation here where we have Judge Cantrell sitting in judgment over a bail setting and obtaining a fee for the court from those situations. We understand all that. I'm sorry. I didn't realize I was out of time, Your Honor. Thank you. Thank you, Your Honor, and we just ask that the court affirm the objection below by Judge Fowler. Did you argue the Cain case also? I did not. I was wondering. Was that a different set of lawyers? It shared one set of co-counsel, but there was a term for more. Okay. Thank you. Ms. DeFore? I did argue the Cain case, Your Honor. I gathered that when you mentioned Judge Haynes. And we made a note in our request for oral argument that the cases were connected. I apologize if it was my responsibility to try to consolidate them, but I tried to cross-reference the two. Well, that's okay. So I just want to return to the beginning of your discussion about the institution of new bail procedures in response to the first part of Count 5 of Judge Fallon's declaratory judgment. And the point is that when Judge Cantrell considers bail, he considers now the declaratory judgment. He considers federal constitutional law, Louisiana law that governs bail procedures. And plaintiffs are implying that despite all of those considerations that he's making under the law, that he also has to consider just the right amount of bail that's enough so that a defendant can make it and the court can get a fee, but, you know, not too much. I mean, it's a really sort of impractical consideration that they say that he's making based on this conflict of interest. It just doesn't make sense. And I know that they disagree that he is complying with the declaratory judgment. We think he's in compliance, but still we're working with plaintiffs' counsel to continue to amend Judge Cantrell's bail procedures to make sure that everybody is on the same page about what he should be doing to come and make sure he's in compliance with the Constitution and Judge Fallon's judgment. I brought up the stuff about debtors' prison and danger to the community because plaintiffs imply that Judge Cantrell, by nature of his executive authority on the court, which we disagree with that he has any executive authority, will somehow be accountable to the public when he's elected as judge or if he's reelected. And, in fact, if he has an interest in this money going to the court, then surely he has an interest in being on the court. I think people are more likely to hold him accountable if they think he's biased in his decision-making, if they criticize his judicial actions, not if the court doesn't have enough funding, because ultimately the city or the state or some combination of the two are responsible for funding this criminal district court. This is not a court like the liquor court in Toomey that the mayor is responsible for the enforcement of the court and the enforcement of the violations and judging the violations. And if they don't have enough money, the court shuts down and that revenue disappears for the village. Well, if these gentlemen or judges have to dispense with a bunch of their staff, it might be a lot more like your liquor court. It might be a lot more likely that what? Like your liquor court. I don't think that we have the option that the city, the city, the executives, that they have the option of closing the doors of the criminal district court. And when there's been a budget shortfall in the past, the judges can and will and have gone to the city and gotten money from them. They are not the ultimate. They are not ultimately responsible for making sure that the criminal district court stays open. That is the job of an executive like the mayor in Dugan or Ward or Toomey. It's not the job of these judges. Their job is to be impartial. They take it seriously. Judge Cantrell takes that oath seriously. And when he goes into these bail hearings and he's trying to do a better and better job in response to this lawsuit. And, you know, he's really, he's being criticized if he sets bail too high. You know, if he sets it just high enough that he can, the court can get some sort of fee. It puts him in an impossible and impractical position. Thank you, Your Honor. Your argument. Thank you very much. Now the court will stand in recess.